**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**BRYCE BREWER**                                                    **PLAINTIFF**

**VS.**                            **CASE NO. 3:15CV00049 PSH**

**CAROLYN W. COLVIN, Acting Commissioner,**
   **Social Security Administration**                          **DEFENDANT**

**ORDER**

      Bryce Brewer, in his appeal of the final decision of the Commissioner of the Social Security Administration to deny his claim for Disability Insurance benefits (DIB), contends: (1)  the Administrative Law Judge (ALJ) erred by failing to find any impairment of his upper extremities; (2) the ALJ erred by relying upon the opinions of nonexamining state agency physicians; (3) the ALJ's credibility analysis was flawed; and (4) the ALJ erred in relying upon the vocational expert, who identified jobs beyond his ability to perform.  The parties have ably summarized the medical records and the testimony given at the administrative hearing conducted on September 11, 2013. (Tr. 25-50).  The Court has carefully reviewed the record to determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  42 U.S.C. § 405(g).

      Mr. Brewer, forty years old at the administrative hearing, testified that he was a high school graduate with three years of college and that he held licenses as a real estate appraiser and a real

estate agent.  The records showed no earnings after his alleged onset date of February 9, 2011[1], and

Mr. Brewer cited poor focus and concentration as the primary barrier to his ability to work.  He

stated that he takes his medications as prescribed, and the medications are helpful and without side

effects.  According to Mr. Brewer, he is able to tend to daily personal hygiene needs.  He stated he

lives with his parents, and helps with chores such as taking out the trash and mowing the lawn, using

a riding mower.  Mr. Brewer's two sons, ages four and nine, live nearby, and Mr. Brewer's daily

activities include driving the older son to school.  He further described his activity level:

> I'll spend time with my boys.  I've got two. . .  And I like to take them fishing.  I used
> to really like to play golf quite a bit, but since my injuries, it's not as easy as it was
> to concentrate and play well. . .
> I have many friends, but – I have cousins – you know, that we'll do things together,
> spend time together.  Hunt, fish, play golf on occasion. . .
> [m]y family doctor told me I could not work in the steel mills because of the dust .
> . .

(Tr. 38-39).  He also stated that his heart problems cause him to "get tired pretty quick, especially

in the extreme heat, and I have to take breaks, slow down, sit down. . ."  (Tr. 40).

Mr. Brewer's attorney asked if his problems would prevent him from performing

maintenance work, including sweeping and emptying trash and cleaning an office building.  Mr.

Brewer responded, "I don't believe so."  (Tr. 41).  Upon further questioning, Mr. Brewer testified

he would need to make lists so that he would remember what to do in such a job setting.  Brewer's

attorney inquired if he could perform work requiring him to use his arms and hands "four or five

hours out of the day, you're gripping.  You're grasping things.  You're, you know, lifting and

---

[1]

Mr. Brewer's medical problems stem from a traumatic episode on February 9, 2011.  He was
admitted to the hospital with septic shock due to an abscess, and remained in the hospital for roughly
five weeks, during which he had cardiac arrest, acute renal failure and other serious complications.
(Tr. 260, 303-305).

carrying things. . . [d]o you have any difficulties using your arms and hands in that fashion?" (Tr. 42). Brewer replied, "No. I do not." (Tr. 42). Mr. Brewer did allow that he could not manipulate objects with his fingers as he did prior to February of 2011, but continued to maintain his hand problems would not interfere with office maintenance or cleaning.

In his October 11, 2013, decision, the ALJ found Mr. Brewer to have the residual functional capacity ("RFC") to perform sedentary work with the following exceptions: avoid exposure to extreme heat and to concentrated fumes, odors or gasses; no more than occasional changes to the workplace setting; interpersonal contact limited to no more than incidental to the work performed; complexity of 1 to 2-step tasks to be learned and performed by rote with few variables and little judgment; and supervision to be simple, direct and concrete. As part of his analysis of Mr. Brewer's mental impairments, the ALJ found he had no more than mild restrictions in daily activities, no limitations in social functioning, marked difficulties in concentration, persistence, or pace, and no episodes of decompensation. The ALJ also addressed Mr. Brewer's credibility, citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which provides the following guidance on issues of credibility:

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
>
> 2. the duration, frequency and intensity of the pain;
>
> 3. precipitating and aggravating factors;

    4.  dosage, effectiveness and side effects of medication;

    5.  functional restrictions.

The adjudicator is not free to accept or reject the claimant's subjective complaints <u>solely</u> on the basis of personal observations.   Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322 (emphasis in original).

Finding that Mr. Brewer could not perform his past relevant work, the ALJ relied upon the testimony of the vocational expert to conclude that he was capable of other jobs, such as document preparer, file clerk, and escort vehicle driver.   As a result, the ALJ found Mr. Brewer was not disabled.  (Tr. 11-20).  We find merit in the fourth argument of Mr. Brewer.

    **The ALJ erred in relying upon the vocational expert, who identified jobs beyond his ability to perform:** The ALJ posed the following hypothetical to the vocational expert:

> [A]ssume an individual of the same age, education, same work experience as what's presented in Mr. Brewer's case.  Let me ask you to assume also that person capable of performing sedentary exertional work...with standing and walking capacity not more than two hours of an eight hour day.  I'd like to limit the work in these additional regards, also.  I'd like the work not to expose the worker to extreme heat or concentrated fumes, odors, or gases.  I'd like the work not to require more than occasional changes to the work place and for the worker.  I'd like the work limited so that interpersonal contact would be incidental to the work performed.  A **complexity of one to two-step tasks would be learned and performed by rote, with few variables and little judgement.**  And the supervision required would be simple, direct, and concrete for the worker.  SVP 1 or 2 jobs that can be learned in 30 days.  And this model would not support the past work that you told us about at a skill light level.

(Tr. 46, emphasis added).

In response to the hypothetical question posed by the ALJ, the vocational expert testified Mr. Brewer could perform the jobs of document preparer, file clerk, and escort vehicle driver.  (Tr. 47).  Mr. Brewer contends these jobs require a reasoning level that is beyond his capability as found by

the ALJ.  Essentially, Mr. Brewer suggests that the ALJ, in stating "[a] complexity of one to two-step tasks would be learned and performed by rote," placed a limit on jobs he could perform to those with level 1 reasoning development.[2]  The jobs testified to by the vocational expert require level 2 or 3 reasoning development, levels Mr. Brewer claims are beyond his abilities.  The jobs of document preparer and file clerk are reasoning level 3 jobs, which is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations." *Appendix C, DOT.*  The escort vehicle driver job is a reasoning level 2 job, which is defined as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations." *Id.*

Defendant Colvin argues that level 2 reasoning skills are not inconsistent with the ALJ's hypothetical posed to the vocational expert.  She also asserts that although the jobs cited by the vocational expert require a reasoning level of 2 or 3, they have an SVP of 2, and therefore are unskilled and simple.

The Court finds that there exists an inconsistency between the ALJ's hypothetical description to the vocational expert, and the vocational expert's opinions that Mr. Brewer could perform jobs requiring level 2 and 3 reasoning.  The language used by the ALJ in the hypothetical called for jobs with a "complexity of one to two-step tasks [that] would be learned and performed by rote, with few

---

[2]

Level 1 reasoning development is defined as the ability to "apply commonsense understanding to carry out simple one- or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Appendix C, DOT.*

variables and little judgement." This description comports closely to the *DOT* description of level 1 reasoning development, which references "one- or two-step instructions" and "occasional or no variables." Because the vocational expert did not offer testimony regarding available level 1 reasoning jobs, the Court finds that the vocational expert's testimony exceeded the limitations set forth in the ALJ's hypothetical. We therefore remand the case for further administrative action consistent with this Order.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is reversed and remanded. This remand is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO ORDERED this 27th day of August, 2015.

_____
UNITED STATES MAGISTRATE JUDGE